## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Civil Action No.   1:24-cv-1345 (MAD/DJS) |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| One 2003 Ferrari Enzo AB Version E, | ) | |
| VIN#: ZFFCZ56B000132659, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION TO STRIKE THE CLAIM OF B AND R ACQUISITION PARTNERS, LLC AND JHM LENDING VENTURES, LLC

 

JOHN A. SARCONE III
Acting United States Attorney
Northern District of New York

By:   Joshua R. Rosenthal
Michael Barnett
Assistant United States Attorneys
Bar Roll Nos. 700730 & 519140

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

Preliminary Statement.................................................................................................................... 1

Statement of Facts and Procedural History.................................................................................... 1

Legal Standard ............................................................................................................................... 4

    A.  Procedural Rules Governing Civil Asset Forfeiture Litigation .......................................... 4

    B.  Motions to Strike................................................................................................................ 5

    C.  Standing ............................................................................................................................. 6

Argument ....................................................................................................................................... 9

Conclusion ................................................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662, 678 (2009) .................................................................................................. 5, 6

*Mercado v. U.S. Customs Serv.*,
   873 F.2d 641, 644 (2d Cir. 1989) ............................................................................................ 7

*Papasan v. Allain*,
   478 U.S. 265, 286 (1986) ..................................................................................................... 5-6

*Patel v. Contemporary Classics of Beverly Hills*,
   259 F.3d 123, 126 (2d Cir. 2001) ............................................................................................ 5

*United States v. $38,570 U.S. Currency*,
   950 F.2d 1108, 1111-13 (5th Cir. 1992) ................................................................................. 7

*United States v. $500,000 in U.S. Currency*,
   591 F.3d 402, 403 (5th Cir. 2009) .......................................................................................... 8

*United States v. $557,933.89, More or Less, in U.S. Funds*,
   287 F.3d 66, 79 (2d Cir. 2002) ............................................................................................... 7

*United States v. 105,800 Shares of Common Stock of FirstRock Bancorp, Inc.*,
   830 F. Supp. 1101, 1117 (N.D. Ill. 1993) ............................................................................... 7

*United States v. All Assets Held at Bank Julius Baer & Co.*,
   772 F. Supp. 2d. 191, 199 (D.D.C. 2011) .............................................................................. 8

*United States v. BCCI Holdings, Luxembourg, S.A.*,
   69 F. Supp. 2d 36, 62 (D.D.C. 1999) ..................................................................................... 9

*United States v. Cambio Exacto, S.A.*,
   166 F.3d 522, 526 (2d Cir. 1999) ........................................................................................ 6,7

*United States v. Carmichael*,
   433 F. Supp. 2d 1259, 1263-65 (M.D. Ala. 2006) ............................................................... 10

*United States* v. *Daugerdas*,
   892 F.3d 545, 548 (2d Cir. 2018) ........................................................................................... 6

*United States v. Egan*,
   654 F. App'x 520, 522 (2d Cir. 2016) .................................................................................... 9

*United States v. One 1982 Porsche 928*,
   732 F. Supp. 447, 451 (S.D.N.Y. 1990) ............................................................................... 7

*United States v. One 1986 Volvo 750T*,
   765 F. Supp. 90, 91 (S.D.N.Y. 1991) ................................................................................... 7

*United States v. One-Sixth Share of James Bulger*,
   326 F.3d 36, 44 (1st Cir. 2003) ............................................................................................ 8

*United States v. Ribadeneira*,
   105 F.3d 833, 836 (2d Cir. 1997) ........................................................................................ 7

*United States v. Schwimmer*,
   968 F.2d 1570, 1581 (2d Cir. 1992) .................................................................................... 7

*United States v. Watts*,
   786 F.3d 152, 167 (2d Cir. 2015) ........................................................................................ 6

*Via Mat International South America, Ltd. v. United States*,
   446 F.3d 1258, 1264 (11th Cir. 2006) ................................................................................. 4

*Willis Mgmt. (Vermont), Ltd. v. United States*,
   652 F.3d 236, 242 (2d Cir. 2011) ........................................................................................ 9

**Rules**

Fed. R. Civ. P. 12(c) ................................................................................................................. 5

Fed R. Civ. P. 12(b)(6) .............................................................................................................. 5

Fed R. Civ. P. Supp. R. G ...................................................................................................... 2,4

Fed R. Civ. P. Supp. R. G(1) .................................................................................................... 4

Fed R. Civ. P. Supp. R. G(5) .................................................................................................... 5

Fed R. Civ. P. Supp. R. G(6) .................................................................................................... 5

Fed R. Civ. P. Supp. R. G(8)(c) ................................................................................................ 5

Fed R. Civ. P. Supp. R. G(5)(b) ................................................................................................ 5

Fed R. Civ. P. Supp. R. G(8)(c)(i) (A) ...................................................................................... 5

Fed R. Civ. P. Supp. R. G(8)(c)(i) (B) ...................................................................................... 5

Fed R. Civ. P. Supp. R. G(8)(c)(ii) (B) ..................................................................................... 5

Fed R. Civ. P. Supp. R. G(5)(a)(i) ............................................................................................ 5

Fed R. Civ. P. Supp. R. G(5)(a)(i)(D) ....................................................................................... 5

**Statutes**

18 U.S.C. § 1963(l)(6)(B) .................................................................................................. 10

18 U.S.C. § 1343 ............................................................................................................ 2,4

18 U.S.C. § 1349 ............................................................................................................... 4

18 U.S.C. § 981(f) ............................................................................................................. 6

18 U.S.C. § 983 ................................................................................................................. 4

18 U.S.C. § 983(a)(4)(A) .................................................................................................. 4

18 U.S.C. § 983(d) ....................................................................................................... 3,10

18 U.S.C. § 983(d)(1) ....................................................................................................... 8

18 U.S.C. § 983(d)(3)(A) .................................................................................................. 9

18 U.S.C. § 983(d)(3)(B) ................................................................................................ 10

18 U.S.C. § 983(d)(3)(B)(i) ............................................................................................ 10

18 U.S.C. § 983(d)(A) .................................................................................................... 10

21 U.S.C. § 853(c) ............................................................................................................ 6

21 U.S.C. § 853(n)(6)(B) ................................................................................................ 11

**Preliminary Statement**

The Government respectfully submits this memorandum of law in support of its motion to strike the claim of B and R Acquisition Partners, LLC and JHM Lending Ventures, LLC (collectively, "B and R") pursuant to Supplemental Rule G(8)(c) of the Federal Rules of Civil Procedure. B and R's claim should be stricken for lack of standing.

B and R asserts that it is an innocent owner – and, specifically, a bona-fide purchaser for value – of a multi-million-dollar house, in Virginia Beach, Virginia, that Kris Roglieri (acting through Prime Capital Ventures, LLC) purchased in January 2023 using the proceeds from a massive fraud scheme.

B and R does not assert that Roglieri used its funds to purchase the house, nor does it claim any connection to the property other than its February 2024 domestication of a judgment, against Prime Capital Ventures, in local court in Virginia Beach, after Roglieri's scheme collapsed. As explained below, B and R's judgment lienholder status is insufficient to make it an innocent owner or bona-fide purchaser under federal law, and its claim should be stricken for lack of standing.

**Statement of Facts and Procedural History**

Kris Roglieri was the CEO and owner of Prime Capital Ventures, LLC ("Prime Capital"), which held itself out to be a commercial lending business capable of making large loans.

Roglieri's fraud scheme collapsed when, in December 2023, Prime Capital became the subject of an involuntary Chapter 7 bankruptcy proceeding in this District. On December 19, 2023, petitioning creditors Compass-Charlotte 1031, LLC ("Compass Charlotte"), 526 Murfreesboro, LLC ("526 Murfreesboro"), and Newlight Technologies, Inc. ("Newlight") filed a petition to put Prime Capital into involuntary Chapter 7 bankruptcy proceedings based on allegations that Prime Capital had fraudulently taken and refused to return $43 million from

1

numerous entities, including more than $20 million from the petitioning creditors and $4.3 million from B and R.

FBI Special Agents arrested Roglieri on May 31, 2024, on a complaint charging wire fraud in violation of 18 U.S.C. § 1343. An indictment, returned on September 19, 2024, tracked the allegations of the complaint and charged Roglieri with defrauding a Minnesota company that transferred $5 million to Prime Capital in connection with Prime Capital's commitment to fund a $100 million commercial loan.

On November 5, 2024, the United States began this civil forfeiture action. The initial complaint sought the forfeiture *in rem* of assets that it alleged were the proceeds of a fraud and money laundering scheme perpetrated by Roglieri, specifically twelve (12) high-end vehicles, a Ferrari engine table, $764,000.83 in U.S. currency, and seven (7) luxury watches. Dkt. no. 1.

On January 15, 2025, the United States filed an amended complaint that, in addition to those items already described, sought the forfeiture of the real property commonly known as 600 Linkhorn Drive, Virginia Beach, VA 23451 (the "Defendant Real Property"). Dkt. no. 20-1. The complaint alleged that in January 2023, Roglieri used client ICA funds[1] totaling $3,772,067.50 to purchase the Defendant Real Property in Prime Capital's name. Id. ¶¶ 140-150.

On February 14, 2025, B and R filed a claim to the Defendant Real Property[2], describing its interest as follows:

---

[1] ICA stands for "Interest Credit Account." Prime Capital obtained ICA payments from clients. These payments were supposed to be upfront, prepaid interest payments for the loans that Prime Capital had agreed to fund. ICA payments did not represent fees to Prime Capital; rather, each borrower's upfront interest payment would be debited over time as the loan was funded and accrued more interest. Some ICA payments, including B and R's, were in the millions of dollars.

[2] At the pleading stage, the Government assumes the truth of the factual assertions made in B and R's claim.

> Secured Judgment Lien Creditor by virtue of domesticated foreign judgment in the amount of $4,300,000.00 together with interest, fees and costs as stated therein, which was validly filed in the Clerk's Office of the City of Virginia Beach (formerly Princess Anne County), Virginia on February 28, 2024 as Instrument No. 202404002909

Dkt. no. 32. B and R's claim described how, in November 2022, it entered into a Business Expansion Line of Credit Agreement by which Prime Capital agreed to loan up to $22,575,000 to B and R. As part of that agreement, B and R made a $4.3 million ICA payment to Prime Capital, but Prime Capital failed to provide the loan and to return the ICA payment. On August 21, 2023, B and R began an arbitration against Prime Capital; on January 15, 2024, an arbitrator awarded it $4.3 million in damages. On February 8, 2024, upon B and R's application, Albany County Supreme Court in New York issued a judgment confirming the arbitration award, as well as $24,686.30 in interest, costs, and disbursements. B and R then domesticated its New York judgment against Prime Capital in the Circuit Court of Virginia Beach. According to B and R, the Judgment Lien created a valid lien against any and all real property of Prime Capital in Virginia Beach, Virginia, including the Defendant Real Property.

On March 6, 2025, B and R filed its answer to the Government's amended complaint. Dkt. no. 38. On April 4, 2025, B and R's counsel wrote a letter to United States Magistrate Judge Daniel J. Stewart that stated in pertinent part:

> B&R is the holder of a perfected security interest in the Property, which is owned by Prime Capital, LLC. B&R was a bona fide purchaser for value of its interest, which it obtained without knowledge and without reasonable cause to believe that the Property was subject to forfeiture. In other words, B&R is an "innocent owner" of its interest in the Property, and the United States may not forfeit that interest. *See* 18 U.S.C. § 983(d). B&R has filed a claim to that effect and answered the complaint for *in rem* forfeiture to assert, among other things, the "innocent" owner defense.

Dkt. no. 49.

On June 12, 2025, a grand jury returned a superseding indictment against Roglieri that, in addition to the previously charged wire fraud counts, charges him with wire fraud conspiracy in violation of 18 U.S.C. §§ 1349, 1343, for conspiring, from in or around March 2022 through January 2024, to fraudulently obtain tens of millions of dollars from Prime Capital's borrower clients and prospective borrower clients by making false and fraudulent representations and promises to the clients and prospective clients about lending arrangements, including but not limited to falsely representing and promising that Prime Capital was able to legitimately fund, or legitimately secure funding for, large commercial loans, and that ICA payments would be used solely in connection with the clients' loans and would be refunded if those loans did not materialize.

## Legal Standard

**A. Procedural Rules Governing Civil Asset Forfeiture Litigation**

The Civil Asset Forfeiture Reform Act, also known as "CAFRA," became effective on August 23, 2000, and was codified in Title 18, United States Code, Section 983. The procedural rules governing civil asset forfeiture actions are found in Rule G of the Supplemental Rules of Civil Procedure. Rule G was adopted in 2006 to bring together in one rule the central procedures that govern civil forfeiture actions. Supp. R. G, advisory committee's note; *see also* 18 U.S.C. § 983(a)(4)(A). Although civil forfeiture actions function much like a typical civil action governed by the Rules of Civil Procedure, Rule G sets forth some of the unique procedural mechanisms particular to forfeiture actions *in rem* that arise from a federal statute.[3]

---

[3] Procedural issues not directly addressed by Rule G may be addressed by the Federal Rules of Civil Procedure. *See* Supp. R. G(1).

Civil forfeiture actions are *in rem* actions against property, rather than a person. *Via Mat International South America, Ltd. v. United States*, 446 F.3d 1258, 1264 (11th Cir. 2006) (a civil forfeiture proceeding is not an action against the claimant; rather, it is an *in rem* action against the property). If a claimant seeks to intervene in the action, it must take two steps. First, a claimant must file a claim with the Court and serve it on the Government. Supp. Rules G(5)(a)(i) and G(5)(a)(i)(D). The claim must: (1) identify the property claimed; (2) identify the claimant and their interest in the property; (3) be signed under penalty of perjury; and (4) be served on the government attorney. Supp. R. G(5)(a)(i). In the second step, the claimant must file an answer to the complaint within 21 days of filing the claim. Supp. R. G(5)(b).

**B. Motions to Strike**

Rule G(8)(c) provides that, at any time before trial, the Government may move to strike a claim or answer "for failing to comply with Rule G(5) or (6)" or "because the claimant lacks standing." Supp. R. G(8)(c)(i)(A) and (B). A challenge to a claimant's standing "may be presented as a motion for judgment on the pleadings." Supp. R. G(8)(c)(ii)(B). Motions for judgment on the pleadings, in turn, are governed by Rule 12(c) of the Federal Rules of Civil Procedure, which states that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). Generally speaking, a Rule 12(b)(6) motion to dismiss should be granted if the complaint does not "contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court need not,

however, accept as true a legal conclusion or a legal conclusion couched as a factual allegation. *See id.* at 678 (citing *Twombly*, 550 U.S. at 555; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation")). Ultimately, whether a complaint states a plausible claim for relief is a context-specific determination that requires "the reviewing court to draw on its judicial experience and common sense"; only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 679 (citations omitted).

C. **Standing**

When property is subject to forfeiture to the United States, title to such property vests in the United States upon the commission of the criminal acts giving rise to forfeiture. 18 U.S.C. § 981(f); 21 U.S.C. § 853(c). Under this principle, known as the relation-back doctrine, "the government's interest in the proceeds of a fraud vests as soon as those proceeds come into existence, and is therefore superior to that of any subsequent third-party recipient of those funds (unless the third party is a bona fide purchaser for value)." *United States* v. *Daugerdas*, 892 F.3d 545, 548 (2d Cir. 2018). In other words, "any proceeds that ensue from the criminal act belong to the government from the moment that they come into existence." *United States v. Watts*, 786 F.3d 152, 167 (2d Cir. 2015). Accordingly, in a civil asset forfeiture case, the Government's interests in forfeitable property trump those of any interests that are subsequently acquired, except for those of an "innocent owner."

"In order to contest a governmental forfeiture action, claimants must have both standing under the statute or statutes governing their claims and standing under Article III of the Constitution as required for any action brought in federal court." *United States v. Cambio*

*Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999). Standing is a threshold issue. If the claimant lacks standing, the court lacks jurisdiction to consider his or her challenge of the forfeiture. The goal of this requirement is "to ensure that the government is put to its proof only where someone with a legitimate interest contests the forfeiture." *United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 79 (2d Cir. 2002).

The burden of proof to establish sufficient standing rests with the claimant. *Mercado v. U.S. Customs Serv.*, 873 F.2d 641, 644 (2d Cir. 1989); *United States v. One 1986 Volvo 750T*, 765 F. Supp. 90, 91 (S.D.N.Y. 1991); *United States v. One 1982 Porsche 928*, 732 F. Supp. 447, 451 (S.D.N.Y. 1990) (abbreviated title). Where the claimant's own allegations are insufficient to demonstrate standing, a motion to strike its claim should be granted. *See United States v. $38,570 U.S. Currency*, 950 F.2d 1108, 1111-13 (5th Cir. 1992) ("Unless claimant can first establish his standing he has no right to put the government to its proof").

In terms of constitutional or Article III standing, a claimant must demonstrate an adequate "interest" in the forfeitable property. As the Second Circuit has explained, "an interest 'in' property must be an interest in a particular, specific asset, as opposed to a general interest in an entire forfeited estate or account." *United States v. Ribadeneira*, 105 F.3d 833, 836 (2d Cir. 1997). "It is well-established that general unsecured creditors do not have standing to contest the forfeiture of their debtor's property." *United States v. 105,800 Shares of Common Stock of FirstRock Bancorp, Inc.*, 830 F. Supp. 1101, 1117 (N.D. Ill. 1993); *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 529 (2d Cir. 1999) (holding that a person to whom a money transmitter owes money lacks standing as a general creditor to contest forfeiture of money transmitter's account); *United States v. BCCI Holdings (Luxembourg), S.A.*, 46 F.3d 1185, 1191

7

(D.C. Cir. 1995) (observing that a "general creditor can never have an interest in specific forfeited property"); *United States v. Schwimmer*, 968 F.2d 1570, 1581 (2d Cir. 1992).

For that reason, the mere holding of an in personam judgment against a party does not confer an interest sufficient to assert a claim against that party's assets in a forfeiture action. *See United States v. All Assets Held at Bank Julius Baer & Co.*, 772 F. Supp. 2d. 191, 199 (D.D.C. 2011) (holding that corporate holder of in personam judgment against participant company in criminal enterprise did not give judgment holder ownership interest in specific property, as required to establish standing in forfeiture action); *United States v. One-Sixth Share of James Bulger*, 326 F.3d 36, 44 (1st Cir. 2003) (stating that even if claimants had secured personal judgment against defendant who owned shares of lottery winnings forfeited to Government, such judgment would not be a secured interest against any particular asset that defendant owned, and would be outside the scope of "owner or lienholder" required for standing) (citations omitted).

In addition to Article III standing, claimants in civil *in rem* forfeiture actions must also plead that they are innocent owners of the property to be forfeited, a concept sometimes termed "statutory standing." That is because, "[u]nder Title 18's civil forfeiture scheme, only 'innocent owners' of seized property hold the right to defend against forfeiture proceedings." *United States v. $500,000 in U.S. Currency*, 591 F.3d 402, 403 (5th Cir. 2009) (citing 18 U.S.C. § 983(d)(1)); *see also United States v. 74.05 Acres of Land*, 428 F. Supp. 2d 57, 62 (D. Conn. 2006) ("The Claimant must also show that it has statutory standing pursuant to 18 U.S.C. § 983(d)(1) to contest the civil forfeiture action").

In particular, Title 18, United States Code, Section 983(d)(1) provides that: "An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute. The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of

8

the evidence." A claimant can be an innocent owner of property whose ownership interest predates or postdates the crime. To qualify as the latter, Title 18, United States Code, Section 983(d)(3)(A) requires as follows:

> With respect to a property interest acquired after the conduct giving rise to the forfeiture has taken place, the term "innocent owner" means a person who, at the time that person acquired the interest in the property—
>
> (i) was a bona fide purchaser or seller for value ["BFP"] (including a purchaser or seller of goods or services for value); and
>
> (ii) did not know and was reasonably without cause to believe that the property was subject to forfeiture.

Federal law determines whether a petitioner has a BFP interest sufficient to overcome forfeiture of property to the Government, whereas a property interest itself is defined by state law. *See Willis Mgmt. (Vermont), Ltd. v. United States*, 652 F.3d 236, 242 (2d Cir. 2011).

## Argument

B and R's claim should be stricken for lack of standing because it is not a BFP of the Defendant Real Property.

B and R is a general creditor of Prime Capital with a judgment lien, as opposed to a BFP that actually gave value to acquire an interest in specific property. In other words, a creditor does not purchase a judgment lien for value; rather, B and R's judgment lien is a collection tool – a claim that B and R purported to place on the Defendant Real Property after obtaining a judgment against Prime Capital based on a prior debt arising from Prime Capital's failure to return B&R's ICA payment. *See United States v. Egan*, 654 F. App'x 520, 522 (2d Cir. 2016) (unpub.) ("a judgment creditor is not a bona fide purchaser for value") (citing *United States v. BCCI Holdings, Luxembourg, S.A.*, 69 F. Supp. 2d 36, 62 (D.D.C. 1999)).

9

*BCCI Holdings*, which arose out of one of the largest bank failures in history, addressed 175 third-party claims made in the wake of a RICO prosecution. The court addressed BFP claims made pursuant to 18 U.S.C. § 1963(l)(6)(B), noting:

> The claimant must be a purchaser, meaning the claimant gave something of value, and received property in return. Creditors and victims are not 'purchasers' because they did not acquire an interest in the defendant's property, they acquired only a contractual debt. …
>
> **A creditor who attempts to satisfy the debt by obtaining a judgment lien, or exercising a right of set-off, against specific property is not a bona fide purchaser of that property because he has given nothing of value in exchange for the property interest**. This is so irrespective of how the antecedent debt came into existence.

69 F. Supp. 2d at 61-62 (emphasis added). B and R's claim must fail as a matter of law, because it gave nothing of value in exchange for the property interest it claims.

Additionally, while Title 18, United States Code, Section 983(d)(3)(B) recognizes certain BFP claims where the "claimant gave nothing of value in exchange for the property," none of its exceptions applies here; for instance, the Defendant Real Property is not B and R's "primary residence." 18 U.S.C. § 983(d)(3)(B)(i). None of these exceptions covers judgment liens.

Section 983(d) does include lienholders among the categories of possible innocent owners, *see* 18 U.S.C. § 983(d)(6)(A), for instance, a laborer who, at a defendant's request, performs unpaid work on a vehicle or a house not realizing the asset is subject to forfeiture. *See, e.g.*, *United States v. Carmichael*, 433 F. Supp. 2d 1259, 1263-65 (M.D. Ala. 2006) (under Alabama law, a person who performed work on defendant's property, and took the steps required by state law to perfect his mechanic's lien, is a BFP). But such claimants do not include a judgment lienholder that has no relationship to the forfeitable asset other than its judgment, arising from an antecedent debt, that it lodged against the asset as a collection tool; in such a situation, there is no purchase for value. *See id.* (noting that in the Sixth Circuit, "'the bona fide

10

purchaser exception of [21 U.S.C.] § 853(n)(6)(B) includes those individuals who **purchase for value** forfeitable property as innocent buyers or lienholders'") (quoting *United States v. Harris*, 246 F.3d 566, 575 (6th Cir. 2001)) (emphasis added).

Taking its factual assertions as true for the purposes of this motion, B and R made a $4.3 million ICA payment to Prime Capital, expecting to receive a commercial loan of up to $22,575,000 – this was the bargained-for exchange. Nowhere does B and R claim that it purchased an interest in the Defendant Real Property for value. Rather, B and R's claim is based solely on its obtaining an arbitration award and then a judgment against Prime Capital, which it then lodged in the local court that has jurisdiction over the Defendant Real Property. Such actions do not make B and R a BFP because its interest in the Defendant Real Property is based on a prior debt that was reduced to judgment, and not on its actually giving value for the property interest itself. B and R is a victim of Roglieri and a creditor of Prime Capital, but it does not allege, and does not have, an interest in the Defendant Real Property that is superior to that of the Government. Accordingly, B and R lacks standing and its claim fails as a matter of law.

## Conclusion

For these reasons, the Government respectfully asks the Court to strike the claim of B and R Acquisition Partners, LLC and JHM Lending Ventures, LLC.

DATED: August 24, 2025.

JOHN A. SARCONE III
Acting United States Attorney
Northern District of New York

By:   Joshua R. Rosenthal
      Michael Barnett
      Assistant United States Attorneys
      Bar Roll Nos. 700730 & 519140

11