# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | **Case No. 1:24-cv-1345- (MAD/DJS)** |
| **Real Property Commonly Known** | ) | |
| **as 600 Linkhorn Drive, Virginia** | ) | |
| **Beach, VA 23541,** *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |

---

## B&R'S RESPONSE IN OPPOSITION TO MOTION TO STRIKE

---

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

FACTUAL AND PROCEDURAL BACKGROUND ..................................................................... 1

STANDARD OF REVIEW ................................................................................................ 4

ARGUMENT ............................................................................................................... 5

    I.      B&R has both Article III and statutory standing to pursue its claim to the
            Defendant Property. ................................................................................... 5

    II.     Whether B&R can establish that it is an "innocent owner" under Section
            983(d) has nothing to do with standing ........................................................ 7

    III.    B&R has pleaded enough to maintain an "innocent owner" defense. ................... 8

         A.     B&R meets the requirements of Section 983(d). ...................................... 9

         B.     The Government mischaracterizes B&R as a general creditor and
             offers an unduly narrow interpretation of Section 983 that ignores its
             text ............................................................................................. 11

CONCLUSION ........................................................................................................... 17

CERTIFICATE OF SERVICE .......................................................................................... 18

4904-6902-5639.7

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allstate Vehicle & Prop. Ins. Co. v. Scott*,
    450 F. Supp. 3d 230 (N.D.N.Y. 2020) ...................................................................4, 5

*Levine v. B & R Acquis. Partners, LLC*,
    2025 WL 2410467 (N.D.N.Y. Aug. 20, 2025) ...........................................................3

*Levine v. B&R Acquisition Partners*,
    No. 24-CV-939 (N.D.N.Y) ..........................................................................................2

*Mut. Life Ins. Co. of New York v. Young's Adm'r*,
    90 U.S. 85 (1874) ..........................................................................................................9

*Prewett v. Weems*,
    749 F.3d 454 (6th Cir. 2014) ...............................................................................16, 17

*Rubeor v. Town of Wright*,
    191 F. Supp. 3d 198 (N.D.N.Y. 2016) ........................................................................4

*Shipp v. Miller's Heirs*,
    15 U.S. 316 (1817) ........................................................................................................9

*United States v. $94,000.00 in U.S. Currency, Along With Any Int. Earned
    Thereon in First Fin. Sav. Ass'n Acct. No. 79-70063411*,
    2 F.3d 778 (7th Cir. 1993) ..........................................................................................16

*United States v. All Assets Held at Bank Julius Baer & Co.*,
    772 F. Supp. 2d 191 (D.D.C. 2011) ...........................................................................13

*United States v. Assets Described in Attachment A to the Verified Compl. Forfeit.
    In Rem*,
    799 F. Supp. 2d 1319 (M.D. Fla. 2011) ...........................................................5, 6, 7, 8

*United States v. Bailey*,
    419 F.3d 1208 (11th Cir. 2005) ...................................................................................8

*United States v. BCCI Holdings, Luxembourg, S.A.*,
    69 F. Supp. 2d 36 (D.D.C. 1999) ...............................................................................15

*United States v. Cambio Exacto*,
    S.A., 166 F.3d 522 (2d Cir. 1999) ...............................................................................5

*United States v. Carmichael,*
    440 F. Supp. 2d 1280 (M.D. Ala. 2006) ...........................................................................13, 15

*United States v. Cox,*
    575 F.3d 352 (4th Cir. 2009) .........................................................................................9

*United States v. Cox,*
    No. 3:05CR92, 2006 WL 1431694 (W.D.N.C. May 23, 2006).............................................14

*United States v. Currency $11,331,*
    482 F. Supp. 2d 873 (E.D. Mich. 2007).........................................................................6

*United States v. Egan,*
    654 F. App'x 520 (2d Cir. 2016) ...................................................................................15

*United States v. Hennings,*
    2018 WL 4221575 (W.D.N.Y. Sept. 5, 2018) ...................................................................17

*United States v. Huntington Nat. Bank,*
    682 F.3d 429 (6th Cir. 2012) .........................................................................................15

*United States v. Mehmood,*
    2011 WL 13266730 (S.D. Iowa Aug. 10, 2011).................................................................5

*United States v. One–Sixth Share,*
    326 F.3d 36 (1st Cir. 2003)........................................................................................5, 12

*United States v. One 1936 Model Ford V-8 De Luxe Coach, Motor No. 18-3306511,*
    307 U.S. 219 (1939)...................................................................................................9, 17

*United States v. One Lincoln Navigator 1998,*
    328 F.3d 1011 (8th Cir. 2003) .........................................................................................7

*United States v. Real Prop., Including All Improvements Thereon & Appurtenances Thereto, Located at 246 Main St., Dansville, Livingston Cnty., New York,*
    118 F. Supp. 3d 1310 (M.D. Fla. 2015)........................................................................9, 15

*United States v. Real Prop. Located at 148 Maunalanikai Place in Honolulu, Hawaii,*
    No. CIV. 07-00049 HG LEK, 2008 WL 3166799 (D. Haw. Aug. 6, 2008)............................16

*United States v. Ressam,*
    553 U.S. 272 (2008)....................................................................................................16

*United States v. Schwimmer,*
    968 F.2d 1570 (2d Cir. 1992)........................................................................................12

*W. T. Jones & Co. v. Foodco Realty, Inc.*,
   318 F.2d 881 (4th Cir. 1963) ................................................................................14

**Statutes**

11 U.S.C. § 547(b) ................................................................................................3

18 U.S.C. § 983 ...................................................................................... *passim*

18 U.S.C. § 1963(1)(6)(B) ..................................................................................16

21 U.S.C. § 853(n)(6)(B) ....................................................................................16

Va. Code Ann. § 8.01-458 ...............................................................................7, 12

Va. Code Ann. § 43-3 ........................................................................................14

Va. Code Ann. § 43-22 ......................................................................................14

**Other Authorities**

Fed. R. Civ. P. 12(b) ...........................................................................................4

Fed. R. Civ. P. 12(c) ...........................................................................................4

Fed. R. Civ. P. Supp. R. G .............................................................................4, 6

B&R Acquisition Partners, LLC and JHM Lending Ventures, LLC (collectively, "B&R") was a good-faith purchaser of commercial lending services for value from an entity called Prime Capital Ventures, LLC ("Prime"). When Prime didn't provide the services that B&R purchased under the parties' agreement, B&R commenced arbitration against Prime. It won an arbitration award; reduced its award to judgment in New York; then domesticated the judgment in Virginia Beach, Virginia. At that point, by operation of Virginia law, B&R had a valid lien on a specific piece of real property owned by Prime.

B&R has already weathered one unauthorized attempt to destroy its lien. *Levine v. B & R Acquis. Partners, LLC,* 2025 WL 2410467, (N.D.N.Y. Aug. 20, 2025). Now, the United States of America ("the Government") says it can forfeit B&R's lien. But the Government's standing arguments miss the mark, and even if its premature merits arguments are considered, there's an interpretation of the forfeiture statute that allows B&R to fall within its "innocent owner defense." The Court should deny the motion.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2022, B&R sought a commercial loan to fund the acquisition of a construction equipment rental and sales business in Dallas, Texas. On November 12, 2022, it entered into a Business Expansion Line of Credit Agreement (the "Agreement") with Prime. Ex. A, Agreement. Under the Agreement, Prime was to provide a line of credit up to $22,575,000.00 to B&R. Ex. A at 3. In return, B&R would pay interest on the amounts it borrowed.  Ex. A at 6 § 3.5. As a prerequisite to funding the loan—and as required by the Agreement—B&R provided Prime with a $4,300,000.00 deposit in the form of an "Interest Credit Account", with such funds to

be used as prepaid interest upon closing and funding of the line of credit. Ex. A at 1. B&R expected Prime to fund the line of credit.

Prime never funded the line of credit. So, on August 24, 2023, B&R commenced arbitration against Prime seeking recovery of its deposit in accordance with parties' Agreement, which contained an arbitration provision. Ex. A at 22 § 13.8. The parties proceeded to arbitration with JAMS, where Prime was represented by an AmLaw 50 firm. ECF No. 32-1 at 7–13. On January 15, 2024, the arbitrator—a former New York intermediate appellate court judge—issued an award in B&R's favor. *Id.* On February 12, 2024, B&R reduced its award to judgment in the Supreme Court of the State of New York, Albany County. *Id.* at 4–6. Then, on February 28, 2024, B&R domesticated that judgment in Virginia Beach, Virginia (formerly Princess Anne County), causing a lien to be filed on a piece of real property that Prime owned at 600 Linkhorn Drive, Virginia Beach, VA (the "Defendant Property"). *Id.* at 1–3; ECF No. 32-2.

As it turned out, three other businesses launched an involuntary bankruptcy against Prime a little over two months before B&R secured its lien. They alleged in their petition that Prime had similarly promised them credit lines that were not funded. Prime and its principal, Kris Roglieri, were represented by an AmLaw 15 firm in that proceeding. As Prime had done in the arbitration with B&R, Prime and Roglieri actively litigated the involuntary bankruptcy dispute and insisted they had done nothing wrong and that the involuntary petition was filed in bad faith.

As this Court knows, the petitioners filed a motion to voluntarily dismiss the involuntary bankruptcy on January 8, 2024. *See Levine v. B&R Acquisition Partners*,

No. 24-CV-939 (N.D.N.Y), at ECF No. 27-17. The largest of the petitioning creditors filed for relief in this Court seeking the appointment of a receiver, Paul Levine, to handle Prime's affairs—an appointment resisted by Prime and Roglieri, again with experienced counsel. *Levine*, No. 24-CV-939, ECF No. 27-1 at 31–53. As this Court also knows, the Receiver filed an unauthorized bankruptcy on Prime's behalf in an attempt to sweep B&R's lien on the Defendant Property into 11 U.S.C. § 547(b)'s "preference period." Upon motion of B&R, the Bankruptcy Court dismissed the unauthorized bankruptcy filing in June 2024 and in anticipation of the Receiver appealing the dismissal, denied a stay pending appeal *sua sponte*. This Court similarly denied a stay. *Levine*, No. 24-CV-939, ECF No. 21. Last month, this Court held that the Receiver's unauthorized filing impermissibly cut off B&R's vested property rights and could not be ratified, thus leaving B&R's lien intact. *Levine v. B & R Acquis. Partners, LLC,* 2025 WL 2410467, (N.D.N.Y. Aug. 20, 2025).

But we're getting ahead of ourselves. On September 19, 2024—over 200 days after B&R perfected its interest in the Defendant Property—the Government indicted Prime's principal Roglieri, charging him with wire fraud stemming from a transaction that occurred in December 2023—11 months after the Defendant Property was purchased by Prime. ECF No. 20-1 at 33 § 163. The Government followed that indictment with this civil forfeiture action on November 5, 2024, filing a verified complaint for forfeiture *in rem* against a number of pieces of Roglieri (and/or Prime)'s personal property. ECF No. 1. Notably, the Defendant Property was not included in the Government's original complaint for *in rem* forfeiture. In fact, the Defendant

Property was not added to the forfeiture action until January 15, 2025—some 322 days after B&R acquired its lien and just one week after B&R was granted relief from the automatic stay in the third iteration of Prime bankruptcy. ECF No. 20-1.

When the Government added the Defendant Property to this action, B&R timely filed a claim, asserting its interest as a secured lienholder. ECF No. 32. B&R then answered the Government's complaint, asserting, among other things, that it was an "innocent owner" of its lien on the Defendant Property under 18 U.S.C. § 983(d). The Government now moves to strike B&R's claim for lack of standing. ECF No. 59.

The Court should deny the motion.

## STANDARD OF REVIEW

The Government has moved to strike B&R's claim for lack of standing pursuant to Fed. R. Civ. P. Supp. Adm. R. G(8)(c). As the Government suggests, this motion is effectively one for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). ECF No. 59-1 at 10–11. The Court assesses those motions "by the same standard as Rule 12(b)(6) motions to dismiss for failure to state a claim upon which relief can be granted." *Rubeor v. Town of Wright*, 191 F. Supp. 3d 198, 202–03 (N.D.N.Y. 2016). "In assessing whether this standard has been met, courts must accept as true all allegations [by B&R]." *Allstate Vehicle & Prop. Ins. Co. v. Scott*, 450 F. Supp. 3d 230, 235 (N.D.N.Y. 2020) (quotation marks and citation omitted). "Because the plaintiff is the moving party, the Court [must] view the pleadings in the

light most favorable to, and draw all reasonable inferences in favor of [B&R]." *See id.*
(quotation marks, citation, and brackets omitted).

## ARGUMENT

I.    **B&R has both Article III and statutory standing to pursue its claim to the Defendant Property.**

The Government's motion to strike is bottomed on the argument that B&R cannot meet its burden to show standing to pursue its claim. As a general matter, the Government is right: "In order to contest a governmental forfeiture action, claimants must have both standing under the statute or statutes governing their claims and standing under Article III of the Constitution as required for any action brought in federal court." *United States v. Cambio Exacto*, S.A., 166 F.3d 522, 526 (2d Cir. 1999). But the Government is wrong to say that B&R can't make that showing.

Start with Article III standing. "In order to have Article III standing in a civil forfeiture case, a claimant must have a 'facially colorable interest' in the property at issue, and courts have repeatedly noted that this standard is not difficult to satisfy." *United States v. Assets Described in Attachment A to the Verified Compl. Forfeit. In Rem*, 799 F. Supp. 2d 1319, 1322 (M.D. Fla. 2011) (quoting *United States v. One–Sixth Share*, 326 F.3d 36, 41 (1st Cir. 2003)). B&R meets that burden: It has a secured judgment lien that attached to the Defendant Property as a matter of Virginia law the moment B&R domesticated and enrolled it in the City of Virginia Beach. *See United States v. Mehmood*, 2011 WL 13266730, at *4 (S.D. Iowa Aug. 10, 2011) (holding that where "judgment automatically attached to real estate held by the Defendants in Clinton County . . . [the claimant] has established the requisite 'legal

interest' for standing."); *cf. United States v. Currency $11,331*, 482 F. Supp. 2d 873, 883 (E.D. Mich. 2007) (finding *un*secured creditor had standing to contest forfeiture).

Turn next to statutory standing. To establish statutory standing under Section 983, a claimant like B&R need only show that "it has complied with the requirements of 18 U.S.C. § 983(a)(2) and Rule G(5)(a) regarding the filing of a claim." *Assets Described in Attachment A*, 799 F. Supp. 2d at 1323. Section 983(a)(2) says that "[a]ny person claiming property seized in a nonjudicial civil forfeiture proceeding under a civil forfeiture statute may file a claim with the appropriate official after the seizure." 18 U.S.C. § 983(a)(2)(A); The claim must simply "(i) identify the specific property being claimed; (ii) state the claimant's interest in such property; and (iii) be made under oath, subject to penalty of perjury." *Id.* § (2)(C).

Supplemental Admiralty Rule G(5)(a)'s requirements are almost identical to those contained in Section 983(a)(2). Under that Rule, a claim must "(A) identify the specific property claimed; (B) identify the claimant and state the claimant's interest in the property; (C) be signed by the claimant under penalty of perjury; and (D) be served on the government attorney designated under Rule G(4)(a)(ii)(C) or (b)(ii)(D)." Fed. R. Civ. P. Supp. Adm. Rule (G)(5)(a); *see also* 18 U.S.C. § 983(a)(4)(A).

B&R met these requirements when it filed its claim in this case. First, B&R's claim identified the Defendant Property, i.e., 600 Linkhorn Drive, Virginia Beach, VA 23451. *See* ECF No. 32 at 2. Second, B&R's claim identified B&R and its interest in that Property—a secured judgment lien, Instrument No. 202404002909, created by operation of Virginia law when B&R enrolled its judgment in the City of Virginia

Beach (formerly Princess Anne County). *See id.* at 3; Va. Code Ann. § 8.01-458 (judgment "shall be a lien on all the real estate of or to which the defendant in the judgment is or becomes possessed or entitled, from the time such judgment is recorded on the judgment lien docket of the clerk's office of the county or city where such land is situated."). Finally, B&R's manager made the claim under oath, subject to penalty of perjury, and served it on the Government. ECF No. 32 at 5. Because B&R met the requirements of a claimant, it has "standing" under Section 983.

## II. Whether B&R can establish that it is an "innocent owner" under Section 983(d) has nothing to do with standing.

The Government does not meaningfully address what Article III or Section 983(a)(2)(A) requires of a forfeiture claimant. Instead, it jumps straightway to the "innocent owner" defense contained in Section 983(d), and says "B and R's claim should be stricken for lack of standing because it is not a BFP of the Defendant Real Property." ECF No. 59-1 at 15. But the Government confuses standing with the merits of Section 983(d)'s innocent owner defense.

"'[S]tanding' and 'ownership' are distinct concepts in civil forfeiture law." *Assets Described in Attachment A*, 799 F. Supp. 2d at 1323. "Although many cases refer to this issue as part of the 'standing' inquiry, it is in fact an element of the innocent owner's claim on the merits." *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1014 (8th Cir. 2003). And "the burden of establishing an innocent owner defense does not arise until after the Government meets its burden of establishing the forfeitability of the subject property in the first instance." *Assets*

*Described in Attachment A*, 799 F. Supp. 2d at 1323.[1] So, "[e]ven if [B&R] is unable to later state a legally adequate innocent owner defense or to establish such a defense once the Government first proves the forfeitability of the property, the proper remedy would not be 'dismissing' [B&R's] claim altogether" at this stage. *Id.*

Because "[t]he definition of 'owner' and the elements of the 'innocent owner defense' set forth in 18 U.S.C. § 983(d) do not relate to the standing inquiry . . . the Government's motion to dismiss [B&R's] claim for lack of statutory standing [must be] denied." *See id.*

### III.    B&R has pleaded enough to maintain an "innocent owner" defense.

Although the Government's motion to strike for lack of standing is really a premature motion to dismiss on the merits of the innocent owner defense, B&R nonetheless addresses what it believes to be the thrust of the Government's argument: that B&R can never meet the statutory requirements of the "innocent owner" defense under Section 983(d) because it holds a judgment lien—as opposed to some other kind of lien—on the Defendant Property. The Government's position doesn't convince.

---

[1] The Government also claims that the relation-back doctrine means its interest in the Property vested the moment the criminal acts occurred. *See* ECF No. 59-1 at 6. But "the relation-back doctrine operates *retroactively* to vest title in the Government effective as of the time of the act giving rise to the forfeiture. That is, it does not secretly vest title at the very moment of the act, but rather title vests *at the time of the court-ordered forfeiture* and then relates back to the act." *See United States v. Bailey*, 419 F.3d 1208, 1213 (11th Cir. 2005) (quotation marks, brackets, and citations omitted) (emphasis added).

### A.    B&R meets the requirements of Section 983(d).

Section 983 provides the "[g]eneral rules for civil forfeiture proceedings." *See* 18 U.S.C. § 983. Because the Court must interpret a forfeiture statute, some background interpretive principles should be kept in mind. Among them: "It is elementary law that forfeitures are not favored, and that provisions for forfeiture must be strictly construed." *Mut. Life Ins. Co. of New York v. Young's Adm'r*, 90 U.S. 85, 99 (1874). Consequently, forfeitures "should be enforced only when within both letter and spirit of the law." *United States v. One 1936 Model Ford V-8 De Luxe Coach, Motor No. 18-3306511*, 307 U.S. 219, 226 (1939). Provisions protecting "innocent owners" of property interests, on the other hand, "must be liberally construed." *See id.*; *see also Shipp v. Miller's Heirs*, 15 U.S. 316, 325 (1817) (noting that "acts, imposing forfeitures, are always construed strictly as against the government, and liberally as to the other parties."); *United States v. Real Prop., Including All Improvements Thereon & Appurtenances Thereto, Located at 246 Main St., Dansville, Livingston Cnty., New York*, 118 F. Supp. 3d 1310, 1323 (M.D. Fla. 2015) (quoting *United States v. Cox*, 575 F.3d 352, 356 (4th Cir. 2009)) (ellipses omitted) (noting that "the term 'bona fide purchaser for value must be construed liberally to include all persons who give value in an arms'-length transaction with the expectation that they would receive equivalent value in return.' ").

With these principles in mind, consider again Section 983's procedure for a civil forfeiture. As explained above, the statute envisions the filing of a claim by an interested property owner after the Government either seizes property in anticipation of forfeiture proceedings or after it actually commences a forfeiture action as to that

property. *See* 18 U.S.C. §§ 983(a)(2)(A), (a)(4)(A). Once the Government does so, "the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." *Id.* § (c)(1).

If the Government meets its burden to show that a piece of property is forfeitable under the statute, a claimant of that property can overcome the forfeiture by showing that it meets the requirements set out in subsection (d)—the so-called "innocent owner defense." That subsection says "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute." *Id.* § (d)(1). Where, as the Government alleges is the case here, "a property interest [is] acquired after the conduct giving rise to the forfeiture has taken place, the term 'innocent owner' means a person who, at the time that person acquired the interest in the property":

> (i)    was a bona fide purchaser or seller for value (including a purchaser or seller of goods or services for value); and
> (ii)   did not know and was reasonably without cause to believe that the property was subject to forfeiture

18 U.S.C. § 983(d)(3)(A)(i)–(ii). An "owner" is later defined by the statute as "a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, *lien*, mortgage, recorded security interest, or valid assignment of an ownership interest." *Id.* § (d)(6)(A) (emphasis added). Excluded from the definition of owners are those persons that only have "a general unsecured interest in . . . the property or estate of another." *Id.* § (d)(6)(B)(i).

B&R has pleaded enough to satisfy the statute's requirements for an "innocent owner." ***First***, B&R "was a bona fide purchaser . . . [of] services for value" from Prime when it "acquired the interest in the [P]roperty." 18 U.S.C. § 983(d)(3)(A)(i). In 2022,

B&R gave approximately $4.3 million to Prime, expecting to receive commercial lending services in return. When B&R did not receive those services, it caused a "lien" to be filed on the Defendant Property to satisfy Prime's antecedent debt to B&R for the services it purchased—giving B&R "an ownership interest in the specific property sought to be forfeited." *Id.* § (d)(6)(A).

*Second*—and though an issue improper for resolution at the pleading stage—B&R "did not know and was reasonably without cause to believe that *the property* was subject to forfeiture." *Id.* § (d)(3)(A)(ii) (emphasis added). It only believed then that Prime's principal Roglieri was an unsavory but well-represented businessman that didn't follow through on his company's contract obligations. It had no reason to think the Defendant Property—or any of Prime's other assets, for that matter—were traceable to some multimillion dollar fraud scheme for which the Government would indict Roglieri several months later. Given that the Government itself did not add the Defendant Property to this action until nearly a year after B&R acquired its interest (intentionally excluding it from its original complaint), it is not clear how or why B&R should have known then that the Defendant Property was forfeitable.

**B.   The Government mischaracterizes B&R as a general creditor and offers an unduly narrow interpretation of Section 983 that ignores its text.**

In its motion to strike, the Government only challenges B&R's ability to satisfy Section 983(d)'s first requirement—that B&R was a "bona fide purchaser . . . [of] services for value." Citing caselaw interpreting the *criminal* forfeiture statute, the Government says that B&R is a "general creditor" and that it can never be an

innocent owner because it did not "actually giv[e] value for the property interest itself." ECF No. 59-1 at 14–16. These arguments fail to persuade for several reasons.

Start with the Government's repeated insinuations that B&R is a "general creditor"—a thinly veiled effort to fit B&R within Section 983(d)(6)(B)(i)'s exclusion of "a person with only a general unsecured interest in . . . the property." That attempt fails because B&R is not an unsecured judgment holder: It's a *secured* judgment *lien* holder by virtue of Virginia state law. *See* Va. Code Ann. § 8.01-458. Put another way, B&R's interest is specific to the Defendant Property in Virginia Beach—it is not a free-floating, *in personam* judgment that may or may not attach to Prime's remaining assets. The lien presently encumbers the Defendant Property.

The Government's caselaw only proves the point. As an initial matter, several of the Government's cases featured claimants that do not appear to have even had a *judgment. See, e.g.*, *United States v. One-Sixth Share Of James J. Bulger In All Present And Future Proceeds Of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 43–44 (1st Cir. 2003); *United States v. Schwimmer*, 968 F.2d 1570, 1581 (2d Cir. 1992). And, as at least one of those cases suggests, a claimant "is no longer merely a general creditor" once it obtains a judgment. *See Schwimmer*, 968 F.2d at 1581. At worst, these cases are inapposite—and at best, they support B&R's position.

Other of the cases cited by the Government also aid B&R by emphasizing the difference in a judgment holder and a judgment *lien* holder. In *All Assets Held at Bank Julius*, for example, the court noted that the claimant's recorded *judgment* did not become a valid lien under District of Columbia law because there was no real

property—only personal—to which the judgment could attach and form a valid lien. *See United States v. All Assets Held at Bank Julius Baer & Co.*, 772 F. Supp. 2d 191, 204 (D.D.C. 2011). Other district courts have similarly faulted a claimant that held a judgment but failed to timely secure the judgment with a lien on specific property. *See United States v. Carmichael*, 440 F. Supp. 2d 1280, 1281 (M.D. Ala. 2006) (explaining that claimant's failure to file its judgment lien until "after learning of the forfeiture" meant it could not be BFP under criminal forfeiture statute). Because B&R secured its judgment with a lien on specific property before it had reasonable cause to know that property was subject to forfeiture, B&R cannot be characterized as a "general creditor" excluded from Section 983(d)'s protections for innocent owners.

That leaves the Government's other argument: that B&R cannot be an innocent owner under Section 983(d) because it was not a "purchaser for value" of the "property interest *itself*." ECF No. 59-1 at 16 (emphasis added). But this argument breaks against the text of the Section 983(d), which does not require that B&R be a purchaser for value of the interest itself. Again, the statute only requires B&R to show that "at the time [it] acquired the interest in the property," it "was a bona fide purchaser or seller for value (including a purchaser or seller of goods or services for value)." 18 U.S.C. § 983(d)(3)(A)(i). Nowhere in that subsection is a requirement that B&R be a purchaser of the *interest* itself.

Nor would that make any sense in light of Section 983(d)'s expansive definition of purchasers and sellers for value. The easiest way to illustrate the problem with the Government's argument is to consider a "seller of . . . services for value," who the

Government concedes would qualify for protection under the statute. ECF No. 59-1 at 15. Plainly, a *seller* of a service—say, a roofer or a carpenter—does not "bargain for" a property interest when it enters into a construction contract to *sell* its services; it bargains for money. In the event that money is not paid to it, though, the seller can obtain a lien, Va. Code Ann. § 43-3; file a lawsuit to enforce the lien, Va. Code Ann. § 43-22; then, with a judgment from that suit in hand, foreclose on the lien and take the property. *See generally W. T. Jones & Co. v. Foodco Realty, Inc.*, 318 F.2d 881, 890 n.14 (4th Cir. 1963) (citation omitted) (noting that under Virginia law, a "mechanic's lien itself is not self-enforcing and is extinguished unless the lienholder files a bill in equity within six months . . . and *obtains a decree* against the debtor's property.") (emphasis added). But at no point in this process did the seller "bargain for" the *interest* it ultimately obtained in the property. Again, it bargained for money.

Similarly, "a bona fide purchaser . . . [of] services for value" like B&R does not "bargain for" its eventual property interest by virtue of "purchasing" services for value. "[N]or is there a requirement that the parties know at the time of bargaining the identity of the exact assets in which they would be gaining or relinquishing rights as part of their bargained-for exchange of value." *See United States v. Cox*, No. 3:05CR92, 2006 WL 1431694, at *7 (W.D.N.C. May 23, 2006). Rather, B&R's interest in the Defendant Property necessarily arose after the would-be seller of those services—here Prime—refused to hold up its end of the bargain, resulting in B&R's obtainment of the lien on the Defendant Property.

In that sense, B&R is no different than a seller of services who obtains a lien after a purchaser of those services refuses to pay. And courts have plainly intimated that a seller of services could qualify as a BFP with nothing more than a judgment lien. *Cf. Carmichael*, 440 F. Supp. 2d at 1282 (quotation marks and citation omitted) ("[Claimant] was an unsecured creditor throughout the forfeiture proceedings, and unsecured creditors are not purchasers for value because their interest lies against the debtor personally as opposed to any specific property. *Assuming that APAC has now filed a valid judgment lien*, it has admittedly done so after learning of the forfeiture. *Therefore*, APAC can assert no valid interest . . . .") (emphasis added). Put simply, Section 983(d)'s language does not require B&R to have specifically bargained for its interest in the Defendant Property on the day it entered its contract with Prime. It was enough that B&R purchased Prime's services for value.[2]

The Government will surely respond to this commonsense, plain-text interpretation with a handful of cases suggesting that a judgment lien holder can never be a BFP because it does not *purchase* the specific property interest. *See* ECF No. 59-1 at 10–11 (citing *United States v. BCCI Holdings, Luxembourg, S.A.*, 69 F. Supp. 2d 36, 62 (D.D.C. 1999) and *United States v. Egan*, 654 F. App'x 520, 522 (2d Cir. 2016)). Tellingly, the best support the Government can muster for this argument

---

[2] Even if the statute required B&R to be a purchaser of the *interest*, B&R effectively swapped an antecedent debt—what Prime owed it after the arbitration—for a specific property interest in Prime's real property. Courts have suggested that receipt of a property interest in satisfaction of a pre-existing debt can be a sufficient exchange of value. *See United States v. Huntington Nat. Bank*, 682 F.3d 429, 434 (6th Cir. 2012); *see also Real Prop., Including All Improvements Thereon*, 118 F. Supp. 3d at 1324 (quotation marks and citation omitted) (noting that "that a secured creditor can qualify as a bona fide purchaser for value, despite not having 'purchased' the property itself.").

comes from cases interpreting the *criminal* forfeiture statutes. *See* 21 U.S.C. § 853(n)(6)(B); 18 U.S.C. § 1963(1)(6)(B). But both of those statutes explicitly define a "bona fide purchaser for value" as someone who purchases "the right, title, or interest *in the property* and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section." 21 U.S.C. § 853(n)(6)(B); 18 U.S.C. § 1963(1)(6)(B) (emphasis added).

As detailed above, Congress did not include that language in Section 983(d). Instead, it dramatically expanded the traditional definition of a "BFP" to include buyers and sellers of goods and services and omitted reference to purchase of "the right, title, or interest in the property." *See supra* at 15–17. Though some courts have blindly called the civil and criminal forfeitures statutes identical, Congress's omission of "a phrase from one statute that Congress has used in another statute with a similar purpose 'virtually commands the inference' that the two have different meanings." *Prewett v. Weems*, 749 F.3d 454, 461 (6th Cir. 2014) (ellipses omitted) (quoting *United States v. Ressam*, 553 U.S. 272, 276–77 (2008)); *compare United States v. $94,000.00 in U.S. Currency, Along With Any Int. Earned Thereon in First Fin. Sav. Ass'n Acct. No. 79-70063411*, 2 F.3d 778, 785 (7th Cir. 1993) (noting in a different context that "Congress could have used identical language in both civil forfeiture and criminal provisions; it did not."), *with United States v. Real Prop. Located at 148 Maunalanikai Place in Honolulu, Hawaii*, No. CIV. 07-00049 HG LEK, 2008 WL 3166799, at *10 (D. Haw. Aug. 6, 2008) (contending that "[t]he *bona fide* purchaser provision in §

983(d)(3)(A) is "*virtually identical*" to the *bona fide* purchaser provision in the criminal drug forfeiture statute.") (quotations and emphasis added).

Put simply, "when Congress chooses to use a phrase in one statute but not in a related statute, 'courts should hesitate to pencil it back in under the guise of interpretation.'" *United States v. Hennings*, 2018 WL 4221575, at *6 (W.D.N.Y. Sept. 5, 2018) (quoting *Weems*, 749 F.3d at 461). That hesitation should be especially pronounced here in light of the Supreme Court's admonition that this Court "liberally construe[ ]" Section 983(d) in B&R's favor. *See One 1936 Model Ford V-8 De Luxe Coach*, 307 U.S. at 226. And there's a not-all-that-liberal interpretation of Section 983(d) that brings B&R within its ambit.

Boiled down: B&R purchased services for value from Prime. Now, it has a lien on a specific piece of property to show for it. That's all Section 983(d) requires.

## CONCLUSION

B&R recorded a lien on a specific piece of property Prime owned. Since then, that interest has been assailed in this Court (and others) by public and private parties alike. Because B&R both has standing and obtained its lien as a purchaser of services for value, the Court should deny the Government's attempt to destroy B&R's lien.

**RESPECTFULLY SUBMITTED**, on September 15, 2025.

**B&R ACQUISITION PARTNERS, LLC
JHM LENDING VENTURES LLC**

*/s/ R. Sumner Fortenberry*
M. Patrick Everman
NDNY Bar No. 705654
R. Sumner Fortenberry
NDNY Bar No. 706020
BRADLEY ARANT BOULT CUMMINGS LLP

188 East Capitol Street, Suite 1000
Jackson, MS 39215-1789
Telephone: (601) 948-8000
peverman@bradley.com
sfortenberry@bradley.com

*Attorneys for B and R Acquisition Partners,*
*LLC and JHM Lending Ventures, LLC*

**OF COUNSEL:**
BRADLEY ARANT BOULT CUMMINGS LLP
One Jackson Place
188 East Capitol Street, Suite 1000
Jackson, MS 39201
P.O. Box 1789
Jackson, MS 39215-1789

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served electronically by the

Court CM/ECF system on September 15, 2025, upon all counsel of record.

*/s/ R. Sumner Fortenberry*
R. Sumner Fortenberry