**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA,**

                                      **Plaintiff,**

    **vs.**                                           **1:24-CV-1345**
                                                              **(MAD/DJS)**

**ONE 2003 FERRARI ENZO AB VERSION E,**
**VIN #: ZFFCZ56B000132659,** *et al.*,

                                      **Defendants,**

    **vs.**

**B AND R ACQUISITION PARTNERS, LLC**
**and JHM LENDING VENTURES, LLC,**

                                      **Claimant.**

---

**APPEARANCES:**                          **OF COUNSEL:**

**OFFICE OF THE UNITED**                   **JOSHUA R. ROSENTHAL, AUSA**
**STATES ATTORNEY**
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, New York 12207
Attorney for the United States

**BRADLEY ARANT BOULT CUMMINGS**          **M. PATRICK EVERMAN, ESQ.**
188 E. Capitol Street - Suite 1000         **RANKIN S. FORTENBERRY, ESQ.**
Jackson, Mississippi 39201
Attorneys for Claimant B and R
Acquisition Partners, LLC and
JHM Lending Ventures, LLC

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION & ORDER

On November 5, 2024, the United States filed a complaint for forfeiture *in rem* against

properties alleged to be proceeds of federal criminal offenses.  *See* Dkt. No. 1.  The properties,

1

named as Defendants, consist of luxury cars, car parts, money, and watches. *See id.* at ¶ 2. The Defendant properties are allegedly associated with "a fraud and money laundering scheme perpetrated by Kris Roglieri, ("Roglieri"), of Queensbury, New York, and others via Prime Capital Ventures, LLC ("Prime Capital"), a purported lending business based in Albany." *Id.* at ¶ 8. A warrant was issued the same day the complaint was filed, which was returned as executed on November 25, 2024. *See* Dkt. Nos. 2, 4, 5.

On January 15, 2025, the Government filed an amended complaint wherein it added "the forfeiture of real property commonly known as 600 Linkhorn Drive, Virginia Beach, Virginia 23451, ("Subject Property") in addition to property previously identified for forfeiture in the complaint filed on November 5, 2024." Dkt. No. 20 at 1. The Government alleges that Prime Capital bought the Virginia Beach home in January 2023. *See id.* at ¶ 141. The Government filed a notice of *lis pendens* the same day, which was amended on January 22, 2025. *See* Dkt. Nos. 21, 24. B and R Acquisition Partners, LLC and JHM Lending Ventures, LLC ("B & R") filed a claim concerning the Virginia Beach house on February 14, 2025. *See* Dkt. No. 32.

On March 27, 2025, the Government filed a motion for writ of entry "for the purpose of conducting an inventory and appraisal of the" Virginia Beach house. Dkt. No. 40-1 at 1. The Government also filed an *ex parte* motion for a preliminary injunction requesting a warrant to seize the house. *See* Dkt. No. 42. Finding probable cause and exigent circumstances to exist, Magistrate Judge Daniel J. Stewart issued the warrant on March 31, 2024. *See* Dkt. No. 43. On April 30, 2025, Magistrate Judge Stewart issued a Report-Recommendation and Order which (1) ordered that the Government's motion for a writ of entry is denied as moot; and (2) recommended the Court adopt his factual findings that the *ex parte* application for the warrant was supported by probable cause and exigent circumstances. *See* Dkt. No. 55. The Court adopted the Report-

Recommendation & Order on July 22, 2025, which permitted the Government to temporarily seize the Virginia Beach house. *See* Dkt. No. 58.

One month later, on August 24, 2025, the Government filed a motion to strike B & R's claim over the Subject Property. *See* Dkt. No. 59. The Government contends B & R lacks standing. *See id.* B & R responded in opposition, see Dkt. No. 60, and the Government replied, see Dkt. No. 61.

For the reasons that follow, the Government's motion is granted.[1]

## II. DISCUSSION

### A.   Standing in General

"Forfeiture is government confiscation of private assets." *United States v. Elias*, 154 F.4th 56, 62 (2d Cir. 2025) (citing *United States v. Contorinis*, 692 F.3d 136, 146 (2d Cir. 2012)). "Forfeiture can happen either in a civil or a criminal proceeding." *Id.* (citing *Contorinis*, 692 F.3d at 146; *United States v. Bajakajian*, 524 U.S. 321, 332 (1998)). "In a civil forfeiture proceeding, the government 'brings a civil action against the property itself as an *in rem* proceeding' to seize property tainted by criminal activity." *Id.* (citations and footnote omitted). "In civil forfeiture, the government may take property connected to criminality, even if the property's current owner or possessor is not guilty of any crime." *Id.* (citing *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 664-68 (1974)). "The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 18 U.S.C. § 983, governs all in rem civil forfeiture proceedings commenced on or after August 23, 2000." *United States v. Premises & Real Prop. with all Bldgs., Appurtenances, Improvements,*

---

[1] While this motion was pending, Roglieri pled guilty to one count of conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1349, 1343. *See United States v. Roglieri*, No. 1:24-CR-392, Dkt. No. 90. The Court entered a preliminary order of forfeiture in that case on February 24, 2026. *See id.*, Dkt. No. 96.

*Located at 509 Raspberry Patch Drive, Rochester, N.Y.*, 116 F. Supp. 3d 190, 192 (W.D.N.Y. 2015).

"To contest a civil forfeiture action, a claimant must have standing under the Constitution and standing under the statute governing his claim." *United States v. $3,093.25 in U.S. Currency*, No. 1:25-CV-332, 2025 WL 3228076, *3 (N.D.N.Y. Nov. 19, 2025) (citation omitted). "Constitutional standing refers to whether the claimant can demonstrate 'a sufficient interest in the property to create a "case or controversy"' pursuant to Article III of the Constitution." *Id.* (quoting *United States v. $14,000.00 U.S. Currency*, No. 19-CV-153, 2020WL 1815756, *2 (W.D.N.Y Apr. 10, 2020)). "To show that he has constitutional standing, a claimant must allege '(1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that can likely be redressed by a favorable decision.'" *Id.* (quoting *United States v. $10,000 in U.S. Currency*, No. 18-CV-1183, 2020 WL 5757471, *4 (N.D.N.Y. Sept 28, 2020)); *see also Mantena v. Johnson*, 809 F.3d 721, 731 (2d Cir. 2015). "Thus, to establish constitutional standing in a civil forfeiture action, 'a claimant must demonstrate an ownership or possessory interest in the seized property' and accompany their claim of ownership with 'some evidence of ownership.'" *Id.* (quoting *United States v. $92,550 United States Currency*, No. 22-CV-0957, 2023 WL 6006378, *2 (W.D.N.Y. July 25, 2023), *R. & R. adopted*, 2023 WL 6557701 (W.D.N.Y. Sept. 5, 2023)) (footnote omitted).

"Statutory standing refers to 'whether [a claimant] has a cause of action under the [relevant] statute.'" *Id.* (quoting *United States v. Starling*, 76 F.4th 92, 101 n. 4 (2d Cir. 2023)). "To show that he has statutory standing in a civil forfeiture action, a claimant must comply with the procedural requirements of Supplemental Rule G(5) and CAFRA." *Id.* (citations omitted); *see also Premises & Real Prop.*, 116 F. Supp. 3d at 193 ("Strict compliance with the Supplemental

4

Rules is generally required, . . . and a claimant's failure to comply with the procedural filing requirements may result in a loss of standing to contest a claim") (internal citation omitted).

The Government is moving to strike B & R's claim on the ground that B & R lacks standing because it is not a bona fide purchaser for value of the Subject Property—the Virginia Beach house. *See* Dkt. No. 59. B & R argues the Government's motion is premature because the motion attacks the merits of B & R's claim rather than its standing to assert a claim. *See* Dkt. No. 60. The Government states that it "is not seeking a ruling on the merits of its forfeiture action, nor on the merits of B [&] R's claim, but a ruling that – accepting its factual allegations as true – B [&] R fails to allege a valid claim as a matter of law." Dkt. No. 61 at 3.

The Government's motion was fully briefed on September 22, 2025. *See generally* Dkt. Nos. 59, 60, 61. On December 4, 2025, the Second Circuit squarely addressed this issue ruling in favor of the Government's argument that the standing inquiry is not premature. *See United States v. Ross*, 161 F.4th 100 (2d Cir. 2025).

In *Ross*, the Second Circuit was reviewing a district court's judgment entered against Ross, an individual who claimed to be an "innocent owner" of the seized property. *See id.* at 107-09. The district court concluded that Ross lacked standing to object to the forfeiture because "he never filed a timely claim to those monies as required by law . . . " *Id.* at 109. In affirming the district court's judgment, the Second Circuit relied on its previous decision, *United States v. Cambio Exacto, S.A.*, 166 F.3d 522 (2d Cir. 1999). *See id.*

The Second Circuit explained that "[i]n *Cambio Exacto*, [it] clearly held that before a claimant can be heard to contest a civil forfeiture claim, he must demonstrate both Article III and statutory standing." *Id.* (citing *Cambio Exacto*, 166 F.3d at 526). "Since *Cambio Exacto*, the Supreme Court has clarified that 'what has been called "statutory standing" in fact' does not relate

to standing but is instead simply 'a question of whether the particular plaintiff "has a cause of action under the statute."'"  *Id.* at n.8 (quoting *Am. Psych. Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016)).  The Second Circuit noted its continued use of the word "standing," but "observed in the civil forfeiture context, the term 'statutory standing' is 'a misleading shorthand,' as it does not in fact 'implicate [a court's] jurisdiction.'"  *Id.* (quoting *Starling*, 76 F.4th at 101 n.4).

Foreclosing B & R's argument that it makes in the present matter, the Second Circuit stated that "Section 983(d)(1) creates *no* exception for persons claiming to be 'innocent owners.'"  *Id.* at 109 (emphasis added).  "Rather, [Section 983] states that a person contesting forfeiture on the grounds of innocent ownership 'shall have the burden of proving that [he] is an innocent owner by a preponderance of the evidence.'"  *Id.* (quoting 18 U.S.C. § 983(d)(1)).  "Implicit in this burden assignment is an innocent-owner claimant's obligation to demonstrate his standing to be heard, the same as any other claimant."  *Id.* at 109-10.  "That conclusion finds support in precedent explaining that '[e]stablishing standing in the context of a forfeiture action before considering the merits of a motion to dismiss simply makes sense: the defendant in such an action is the res, not the claimant."  *Id.* (quoting *United States v. Vazquez-Alvarez*, 760 F.3d 193, 197 (2d Cir. 2014)).  "'Without standing, the claimant lacks the right to bring any motion, regardless of the basis.'"  *Id.* (citation omitted).

The Second Circuit posited that "[t]he requirement to demonstrate Article III standing *before* being heard on an innocent-owner challenge to forfeiture is hardly onerous: a person need show only a 'facially colorable interest' in the property at issue; whether he 'ultimately proves the existence of that interest' is a question for a later stage in the proceedings."  *Id.* (emphasis added) (quoting *United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 79 & n.10 (2d

Cir. 2002)).  "[T]he Second Circuit has confirmed that a district court need not reach the merits of a motion filed by a claimant who lacks statutory standing in an in rem civil forfeiture proceeding." *United States v. Real Prop. & Premises Located at 26421 Riverrock Way, Santa Clarita, California 91350-3995*, No. 15-CV-6762, 2025 WL 1291658, *5 (E.D.N.Y. May 5, 2025) (citing *Vazquez-Alvarez*, 760 F.3d at 197).

Based on the Second Circuit's decision in *Ross*, the Court will review the Government's arguments related to B & R's standing to assert a claim over the Subject Property.  The Government's arguments are not premature, nor do they require the Court to address the merits of B & R's claim.

**B.      Whether B & R Has Standing to Assert a Claim Over the Subject Property**

Pursuant to the civil forfeiture statute, "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute."  18 U.S.C. § 983(d)(1).  "The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence." *Id.*

> With respect to a property interest acquired after the conduct giving rise to the forfeiture has taken place, the term "innocent owner" means a person who, at the time that person acquired the interest in the property--
>
> > (i) was a bona fide purchaser or seller for value (including a purchaser or seller of goods or services for value); and
> >
> > (ii) did not know and was reasonably without cause to believe that the property was subject to forfeiture.

*Id.*  Section 983 does not define "a bona fide purchaser or seller for value."

The Government argues B & R is not a bona fide purchaser of the Virginia Beach house; therefore, B & R cannot assert a claim against it.  *See* Dkt. No. 59-1 at 14-16.  The Government

7

contends "B [&] R is a general creditor of Prime Capital with a judgment lien, as opposed to a [bona fide purchaser] that actually gave value to acquire an interest in specific property." *Id.* at 14. The Government quotes the Second Circuit's decision in *United States v. Egan*, for the proposition that "a judgment creditor is not a bona fide purchaser for value." *Id.* (quoting *United States v. Egan*, 654 Fed. Appx. 520, 522 (2d Cir. 2016) (summary order) (citing, in turn, *United States v. BCCI Holdings, Lux., S.A.*, 69 F.Supp.2d 36, 62 (D.D.C. 1999)).

B & R asserts "there's an interpretation of the forfeiture statute that allows B&R to fall within its 'innocent owner defense'" and that the Government's reliance on *Egan* is misplaced because *Egan* concerned criminal forfeiture rather than civil forfeiture. Dkt. No. 60 at 6, 20-21.

B & R explains that it sought a commercial loan to its business in 2022 and entered into a contract with Prime Capital. *See id.* at 6. The contract stated Prime Capital would provide a $22,575,000.00 in a line of credit to B & R, and B & R would pay interest to Prime Capital. *See id.* B & R paid Prime Capital a $4,300,000.00 deposit, but Prime Capital never produced any funds. *See id.* at 6-7. B & R sued Prime Capital and was awarded a judgment in its favor on February 12, 2024, in New York State court. *See id.* at 7. "[O]n February 28, 2024, B&R domesticated that judgment in Virginia Beach, Virginia[,] . . . causing a lien to be filed on" the Subject Property. *Id.*

B & R refers to itself as "a secured lienholder." *Id.* at 9. It states "[i]t has a secured judgment lien that attached to the Defendant Property as a matter of Virginia law the moment B&R domesticated and enrolled it in the City of Virginia Beach." *Id.* at 10. B & R argues it "has pleaded enough to satisfy the statute's requirements for an 'innocent owner.'" *Id.* at 15. B & R avers that it "'was a bona fide purchaser . . . [of] services for value' from Prime when it 'acquired the interest in the [P]roperty.'" *Id.* (quoting 18 U.S.C. § 983(d)(3)(A)(i)). B & R contends its lien

against the Subject Property, which was granted "to satisfy Prime's antecedent debt to B&R for the services it purchased" gave "B&R 'an ownership interest in the specific property sought to be forfeited.'" *Id.* at 16 (quoting 18 U.S.C. § 983(d)(6)(A)).

The Government adamantly disagrees, stating that B & R cannot be a bona fide purchaser of the Subject Property because "its interest in the Defendant Real Property is based on a prior debt that was reduced to judgment, and not on its actually giving value for the property interest itself." Dkt. No. 61 at 5.

Recently, a judge in the District of Utah noted that "[n]umerous federal courts have held in both civil and criminal forfeiture cases considering a similar bona fide purchaser provision that judgment creditors do not qualify as bona fide purchasers[.]" *United States v. Real Property Located at 200 Meadowood Trail, Martinsville, Virginia, & Real Property Located at 2947 East 1300 South, Spanish Fork, Utah*, No. 2:24-CV-369, 2026 WL 622580, *11 (D. Utah Mar. 5, 2026). In support of that statement, the court did not cite or quote any cases. *See id.*

Nevertheless, the Government is correct that the Second Circuit has stated that "a judgment creditor is not a bona fide purchaser for value." *Egan*, 654 Fed. Appx. at 522; *see also* Dkt. No. 59-1 at 14. B & R's argument that the Government's reliance on *Egan* is weakened because *Egan* concerned a criminal forfeiture matter is unavailing. *See* Dkt. No. 60 at 20-21. The Second Circuit has stated that "[a]lthough . . . the criminal and civil forfeiture provisions are not identical, . . . Congress' intention [was] to vest in the government the same substantive rights under the two statutes, notwithstanding their technical differences." *Pacheco v. Serendensky*, 393 F.3d 348, 355 (2d Cir. 2004) (citing *United States v. Littlefield*, 821 F.2d 1365, 1367 (9th Cir. 1987); *United States v. Smith*, 966 F.2d 1045, 1053-54 (6th Cir. 1992)) (internal citations omitted). In fact, the statutes intertwine in such a way that "when there is no provision for

9

criminal forfeiture, the government may use a civil forfeiture provision if it includes such allegation in the indictment." *United States v. Schlesinger*, 396 F. Supp. 2d 267, 275 (E.D.N.Y. 2005), *aff'd*, 514 F.3d 277 (2d Cir. 2008). Therefore, the Court finds the Government's reliance on *Egan* to be persuasive and supportive of the Government's argument that B & R is not a bona fide purchaser of the Subject Property. *Cf. Elias*, 154 F.4th at 66 ("While § 981(a)(1)(C) is a civil forfeiture statute, here it has been invoked in a criminal proceeding through 28 U.S.C. § 2461(c) and therefore operates as criminal forfeiture statute. Moreover, the procedures of § 853 apply to a criminal proceeding seeking forfeiture pursuant to § 981(a)(1)(C) . . .").

The Court will not, however, stop at *Egan*, which is an unpublished opinion related to criminal forfeiture. The Government notes that "[f]ederal law determines whether a petitioner has a [bona fide purchaser for value] interest sufficient to overcome forfeiture of property to the Government, whereas a property interest itself is defined by state law." Dkt. No. 59-1 at 14. B & R contends there is federal and state law supporting its contention that it is a bona fide purchaser of the Subject Property. *See* Dkt. No. 60 at 19-22.

B & R relies, in part, on a decision from the Middle District of Florida to support its assertion that "[c]ourts have suggested that receipt of a property interest in satisfaction of a pre-existing debt can be a sufficient exchange of value." Dkt. No. 60 at 20 n.2 (citing, *inter alia*, *United States v. Real Prop., Including All Improvements Thereon & Appurtenances Thereto, Located at 246 Main St., Dansville, Livingston Cnty., New York*, 118 F. Supp. 3d 1310, 1324 (M.D. Fla. 2015)). The judge in that case explained that "[i]n order to assert the 'innocent owner' defense, an individual must first qualify as an 'owner,' as defined by the statute, with an ownership interest in the property 'including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest.'" *Real Prop., Including al Improvements*,

10

118 F. Supp. 3d at 1316 (quoting 18 U.S.C. § 983(d)(6)(A)).  Then, the claimant must meet the "innocent owner" requirements: "First, the individual 'was a bona fide purchaser or seller for value.' . . .   Second, the individual 'did not know and was reasonably without cause to believe that the property was subject to forfeiture.'"  *Id.* (quoting 18 U.S.C. § 983(d)(3)(A)(i), (ii)).

Contrary to B & R's earlier rejection of the Government's reliance on "cases interpreting the *criminal* forfeiture statutes," Dkt. No. 60 at 20-21, the Florida case, that B & R quotes, explains that "'[t]he civil-forfeiture statute, 18 U.S.C. § 983, does not provide a definition of "bona fide purchaser for value," so courts have borrowed the definition from the Continuing Criminal Enterprise Act, 21 U.S.C. § 853(n)(6)(B).'"  *Real Prop., Including all Improvements*, 118 F. Supp. 3d  at 1322-23 (quoting *United States v. Contents of Smith Barney Citigroup Account No. 34-19*, 482 Fed. Appx. 134, 137 n. 2 (6th Cir. 2012)).  The Florida court noted that "the United States Court of Appeals for the Eleventh Circuit has stated that a bona fide purchaser for value 'means that the *only* assets that are potentially immunized from forfeiture are those *for which value has been given*.'"  *Id.* at 1323 (quoting *United States v. McCorkle*, 321 F.3d 1292, 1295 n.4 (11th Cir. 2003)) (emphasis added).

Despite acknowledging this general rule, the Florida district court relied on "the Sixth Circuit's decision in *United States v. Huntington National Bank*, 682 F.3d 429 (6th Cir. 2012)," which "cited with approval a decision from the United States Court of Appeals for the Seventh Circuit, *United States v. Frykholm*, 362 F.3d 413 (7th Cir. 2004)" for the assertion that "swapp[ing] antecedent debt or a preexisting claim . . . in whole or in part, for the [Subject] Property" qualifies the purchaser as "a bona fide purchaser for value . . . ."  *Real Prop., Including all Improvements*, 118 F. Supp. 3d  at 1325-27.

11

B & R is, therefore, correct that the Florida court concluded there can be circumstances where a claimant is a bona fide purchaser of the subject property even though they did not purchase the property, outright. *See* Dkt. No. 60 at 20, n.2.

However, looking to the cases relied on by the Florida court, two judges in this district "have engaged extensively with the Sixth Circuit's *Huntington* decision." *United States v. Mann*, 729 F. Supp. 3d 257, 271 (N.D.N.Y. 2024) (discussing a magistrate judge's report-recommendation). The judges have concluded that "*Huntington* is inapposite. The Sixth Circuit has held that the term 'bona fide purchaser' should be defined according to federal law for the purposes of Section 853(n)(6)(B)." *Id.* (citing *Huntington*, 682 F.3d at 433). "By contrast, . . . the Second Circuit has suggested that bona fide purchaser status should be determined with reference to state law." *Id.* (citing *Pacheco v*, 393 F.3d at 352; *United States v. Mendez*, No. 07-CR-107, 2008 WL 3874318, *3 (E.D.N.Y. Aug. 19, 2008)).

Specifically, in *Pacheco*, the Second Circuit recounted that "[t]he district court found that Pacheco was not a 'bona fide purchaser' under New York law. . . . To be a bona fide purchaser, a party 'must have no knowledge of the outstanding lien and win the race to the recording office.'" *Pacheco*, 393 F.3d at 353 (citing *Jenkins v. Stephenson*, 745 N.Y.S.2d 30, 32 (2d Dept. 2002)). The Second Circuit agreed that, if the district court had correctly determined "whether the criminal forfeiture statute permits partial forfeitures of real property[,]" then it would have correctly granted the Government's motion to dismiss the claim because the claimant failed to sufficiently allege she was a bona fide purchaser of the property at issue. *Id.* at 354. However, the Second Circuit concluded that because the Government erred on the first issue, the second bona fide purchaser issue was improperly reached. *See id.* at 356.

12

Regardless, the Court agrees with District Judge Lawrence E. Kahn in his *Mann* decision "that bona fide purchaser status should be determined with reference to state law." *Mann*, 729 F. Supp. 3d at 271; *see also Willis Mgmt. (Vermont), Ltd. v. United States*, 652 F.3d 236, 242 (2d Cir. 2011) ("State law determines a petitioner's legal interest in the property at issue") (citing *Pacheco*, 393 F.3d at 353-56); *see also United States v. Chowaiki*, 369 F. Supp. 3d 565, 572 (S.D.N.Y. 2019) ("Where the petitioner has no valid interest in the property under state law, 'the inquiry ends, and the claim fails for lack of standing'") (quoting *United States v. Watts*, 786 F.3d 152, 161 (2d Cir. 2015)); *United States v. Meiri*, No. 15-CR-627, 2024 WL 342491, *3 (S.D.N.Y. Jan. 30, 2024) ("The question whether a petitioner is a bona fide purchaser is determined by reference to state law").

B & R states that "[i]t's a secured judgment lienholder by virtue of Virginia state law." Dkt. No. 60 at 17. B & R obtained the judgment against Prime Capital from Albany County Supreme Court. *See id.* at 7. It then "domesticated that judgment in Virginia Beach, Virginia." *Id.* B & R cites one case out of the Southern District of Iowa and one case out of the Eastern District of Michigan to support its statement that "[i]t has a secured judgment lien that attached to the Defendant Property *as a matter of Virginia law* the moment B & R domesticated and enrolled it in the City of Virginia Beach." *Id.* at 10 (emphasis added) (citing *United States v. Mehmood*, No. 3:09-CR-24, 2011 WL 13266730, *4 (S.D. Iowa Aug. 10, 2011); *United States v. Currency $11,331*, 482 F. Supp. 2d 873, 882 (E.D. Mich. 2007)).

First, neither of the cases cited by Plaintiff apply Virginia law. Second, Plaintiff relies on the Iowa case for the contention that a judgment lien grants a creditor a property interest, but the Iowa case concluded that the claimant was "not a bona fide purchaser for value because the majority view is that general, unsecured creditors are not bona fide purchasers for value."

13

*Mehmood*, 2011 WL 13266730, at \*4.  The Michigan case does even address bona fide purchasers for value.  *See Currency $11,331*, 482 F. Supp. 2d at 884.

Rather, as the Government asserts, "B [&] R may be . . . a secured creditor with a judgment lien against the Defendant Real Property, but this does not automatically make it an innocent owner and [bona fide purchaser of the Subject Property] with an interest in that property superior to the Government's."  Dkt. No. 61 at 3.  The Government does not state whether Virgina or New York law applies, *see* Dkt. Nos. 59, 61, and the Court will not engage in a choice of law analysis because Virginia and New York law confirm the same conclusion—B & R is not a bona fide purchaser of the Subject Property.

As to Virginia law, "Code § 8.01-458 provides that a properly docketed judgment 'shall be a lien on all the real estate' of the judgment debtor.  'Jurisdiction to enforce the lien of a judgment shall be in equity.'"  *McKeithen Tr. of Craig E. Caldwell Tr. U/A Dated Dec. 28, 2006 v. City of Richmond*, 302 Va. 422, 436-37 (2023).  "[A] judgment lien [i]s 'a right given the judgment lien creditor to have his claim satisfied by the seizure of the land of his judgment debtor' and 'a right to levy on any such lands for the purpose of satisfying the judgment.'"  *Id.* (citation omitted).  "A judgment lien [] constitutes a 'vested property right' to recover the secured debt from the proceeds of a judicial sale of real property . . . ."  *Id.* (citation omitted).  However, "[i]t is not sufficient that a conveyance of the legal title is made as security for an antecedent debt. . . .  Neither judgment creditors nor assignees for creditors are bona fide purchasers . . . ."  *In re Anderson*, 1 F. Cas. 831, 836-37 (E.D. Va. 1874) (citations omitted); *cf. In re Perrow*, 498 B.R. 560, 574-75 (Bankr. W.D. Va. 2013) ("Under Virginia law, the imposition of a constructive trust in favor of a creditor is sufficient to protect that creditor's interest from that of a lien creditor, but not a bona fide purchaser") (citation omitted).

14

A district court in Virgina distinguished between "a 'bona fide creditor,'" who obtained a "money judgment" against property and a bona fide purchaser because "'[a] judgment creditor can acquire no better right to the estate of a debtor than the debtor himself has when the judgment is recovered. . . .  The creditor is in no sense treated as a purchaser.'"  *United States v. McClung*, 6 F. Supp. 2d 548, 552 (W.D. Va. 1998) (quoting 11A Michie's Juris., *Judgments and Decrees*, § 63 (1997*); Barnes v. American Fertilizer Co.*, 144 Va. 692, 130 S.E. 902 (1925)).

New York law confirms the same.  Under New York Law, "[t]he judgment creditor is simply not a 'purchaser,' and therefore does not get the benefit of the equitable doctrine of bona fide purchaser for value without notice."  *Mortgages: Basic rules*, 36 N.Y. PRAC., Lien Priorities in New York § 2:12 (citing Bogert, *Trusts and Trustees*, § 887 (Rev 2d ed 1982); 2 *Freeman on Judgments*, §§ 950, 970, 972 (5th ed 1925); Osborne on Mortgages, § 189 (1951)); *see also* 5 N.Y. Jur. 2d Appellate Review § 807 ("[N]either a judgment creditor who purchases the property at an execution sale nor a trustee who buys it for the benefit of such a judgment creditor is a bona fide purchaser so as to preclude restitution on motion") (citing *Murray v. Berdell*, 98 N.Y. 480, 1885 WL 10580 (1885)); *In re Euro-Swiss Int'l Corp.*, 33 B.R. 872, 880-81 (Bankr. S.D.N.Y. 1983) ("In New York, judgment lien and execution creditors do not enjoy the protection of the recording statute") (collecting state cases).

B & R has not presented any controlling or persuasive authority which negates the Second Circuit's statement in *Egan* that "a judgment creditor is not a bona fide purchaser for value," *Egan*, 654 Fed. Appx. at 522, or Viriginia and New York's laws confirming that "[n]either judgment creditors nor assignees for creditors are bona fide purchasers within this rule." *In re Anderson*, 1 F. Cas. at 836-37, and "[t]he judgment creditor is simply not a 'purchaser,' and

therefore does not get the benefit of the equitable doctrine of bona fide purchaser for value without notice." *Mortgages: Basic rules*, 36 N.Y. PRAC., Lien Priorities in New York § 2:12.

B & R is a judgment creditor with a secured lien against the Subject Property. Although that gives B & R a property interest in the Subject Property, it does not make B & R a bona fide purchaser for value with rights to the Subject Property superior to the Government in this civil forfeiture action. Simply put, B & R did not purchase the Virginia Beach house. Accordingly, because B & R has been unable to demonstrate that it is a bona fide purchaser for value of the Virginia Beach house—the property underlying its claim in this civil forfeiture action—B & R lacks standing to assert a claim under 18 U.S.C. § 983(d)(1).[2]

### III. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Government's motion to strike (Dkt. No. 59) is **GRANTED**; and the Court further

**ORDERS** B & R Acquisition Partners, LLC and JHM Lending Ventures, LLC's Claim (Dkt. No. 32) is **STRICKEN**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of the Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  March 18, 2026
        Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[2] Because B & R has failed to establish statutory standing, the Court need not address whether it established constitutional standing.